1  Michael D. Gutierrez #V68887
   P.V.S.P A4-141
2  P. O. Box 8501
   Coalinga, CA 93210
3
   Petitioner in Propria Persona
4

FILED

2008 JUL -8 A 7 51

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA.S.J.

8           UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA

10              SAN JOSE DIVISION

12  MICHAEL DAVID GUTIERREZ,              CASE NO. 5:07-CV-03668-RMW

13       Petitioner in Propria Persona,    **MEMORANDUM OF POINTS AND
                                            AUTHORITIES IN SUPPORT OF
14       vs.                               MOTION FOR PERMISSION TO
                                           ELECTRONICALLY FILE DOCUMENTS**
15  JAMES A. YATES, WARDEN,
    DEPARTMENT OF CORRECTIONS,            [Filed Concurrently with Notice of Motion;
16  PLEASANT VALLEY STATE                 Declaration of Michael David Gutierrez;
    PRISON,                               Declaration of Robert Mendosa; Proposed
17                                         Order]
         Defendants.
18
                                          Date:        July 14, 2007
19                                        Time:        9:00 a.m.
                                          Judge:       Hon. Ronald M. Whyte
20                                        CourtRoom:   6

ORIGINAL

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION FOR PERMISSION TO E-FILE DOCUMENTS IN THE INSTANT ACTION**

## I.    INTRODUCTION

The instant action is brought by Petitioner, MICHAEL DAVID GUTIERREZ, a California state prisoner challenging his incarceration after sustaining a felony conviction in Santa Clara County Superior Court on February 2, 2005.  On March 4, 2005, Petitioner timely appealed his conviction to the California Sixth Appellate District and the Appellate Court in an unpublished opinion on November 20, 2006 affirmed the judgment but directed the trial court to correct the abstract of judgment to reflect that the enhancement on Count 2 under Penal Code Section 12022.7 be stayed.  (Exhibit "A").  On January 1, 2007 Petitioner timely filed a Petition for Review with the California Supreme Court but his Petition for Review was denied on February 14, 2007.  (Exhibit "B")

On July 17, 2007 Petitioner timely filed the instant writ of habeas corpus seeking review of the state Appeal Court's ruling.  Along with the instant writ, Petitioner also filed a Motion to Proceed in Forma Pauperis and an Ex Parte Motion to Appoint Counsel.  The docket sheet in the instant action indicates that on July 17, 2007 the case is designated for electronic filing.  (Exhibit "C")

## II.    PETITIONER SEEKS THE PERMISSION TO ELECTRONICALLY FILE DOCUMENTS IN FURTHERANCE OF THE INSTANT ACTION AND ASSERTS THAT HE IS CAPABLE TO PROCEED IN THIS FASHION

Petitioner brings this action in good faith, believes that his claim has merit and moves this Court pursuant to the Federal Rules of Civil Procedure 7(b) for an order permitting him to electronically file ("e-file") documents in the instant action so that he may more effectively pursue his claim.  Petitioner believes that he can fully comply with any and all e-filing requirements that the court imposes on all litigants.  In that regard, Petitioner has authorized the opening of an email account specifically for the purpose of communicating with the court and retrieving court documents.  That email account is: gutierrezdm100@yahoo.com.  (See Decl. of Michael Gutierrez and Robert Mendosa).

-2-

1    Petitioner has enlisted the assistance of his second cousin, Robert Mendosa, who is

2   listed as a secondary email account holder on various other unrelated civil cases pending

3   before the Northern District of California.  Mr. Mendosa regularly e-files documents in

4   the Northern District (under the supervision of attorney), as well as in other state and

5   federal courts.  Mr. Mendosa maintains a personal Public Access to Electronic Records

6   ("PACER") account and is thoroughly familiar with filing, searching and retrieving

7   documents from the federal Case Management/Electronic Case Files ("CM/ECF") system

8   as well PACER.  (See Decl. of Robert Mendosa)

9    Petitioner has granted Mr. Mendosa access to an email account and has authorized

10  him to file and retrieve documents on his behalf via the CM/ECF and PACER systems.

11  (See Decl. of Michael Gutierrez)

12   Mr. Mendosa, is willing to assist Petitioner e-file documents in the pending action

13  and is familiar with the Federal Rules of Civil Procedure as well as the local court rules

14  governing e-filing in the Northern District.  Mr. Mendosa has all the requisite equipment

15  necessary to e-file documents with the court, including but not limited to computers,

16  scanners, Internet and email access and an active PACER account.  (Declaration Robert

17  Mendosa).

18  **III.   PETITIONER WILL BE AT A DISTINCT DISADVANTAGE SHOULD HE**

19        **NOT BE PERMITTED TO ELECTRONICALLY SUBMIT DOCUMENTS**

20        **IN SUPPORT OF HIS CASE.**

21   Given that Respondent was allowed to file his Answer to Order to Show Cause and

22  supporting papers electronically, it would be inequitable for the court to deny Plaintiff the

23  ability to electronically file documents in a similar manner should he so desire.

24   Electronic filing has numerous advantages, including simplifying and standardizing

25  the filing process, reducing errors in copying and transcription and simultaneous

26  electronic service of all parties.  Other advantages include reducing the costs of printing,

27  copying and retaining messengers to physically file such documents with the courts as

28  well as postage costs associated with conventional court filings. Further, litigants have the

-3-

1   ability to access court filings in almost real time thus enabling litigants more time to not

2   only file their documents but to respond to them as well.

3   **IV.    ON FEBRUARY 11, 2008 THE COURT GRANTED PETITIONER'S**

4   **MOTION TO PROCEED IN FORMA PAUPERIS BUT DENIED**

5   **PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL**

6   Because of the limited access that Petitioner has to legal materials, typewriters and

7   other resources to properly prosecute this case, Petitioner believes that e-filing is the most

8   efficient and economical manner to proceed in the case before this court.  Further, on

9   February 11, 2008, Petitioner's motion for appointment of counsel in the instant action

10  was denied, therefore, Petitioner is now compelled to enlist the assistance of a relative

11  (non-lawyer) Robert Mendosa to assist him in prosecuting this action.  It should be noted

12  that Mr. Mendosa resides in Southern California while Petitioner is incarcerated in

13  Northern California (Decl. of Robert Mendosa).

14  **A.    Judicial Recommendations Support Petitioner's Request That He Be**

15  **Granted Authorization to E-File Documents in the Instant Action**

16  The Ninth Circuit's Final Task Force Report on Self-Represented Litigants (the

17  "Task Force") (http://www.ce9.uscourts.gov/publications/FinalTaskForceReport.pdf) was

18  prepared in recognition of the number of cases in all courts in the circuit in which one or

19  more parties appeared without counsel, either on a temporary basis or throughout the

20  course of litigation. Chief Judge of the Ninth Circuit, the Honorable Mary Schroeder also

21  observed in the Report that: ". . . although there continued to be a steady stream of filings

22  by pro se prisoners, the incidence of filings by non-prisoner pro se litigants in cases

23  ranging from breach of contract to civil rights cases was on the increase, and . . . many

24  states in this circuit and elsewhere had already developed a variety of innovations to cope

25  with a corresponding pro se phenomenon in their court systems." (Exhibit "D", Page 1, ¶

26  1of Final Report)

27  The Task Force was charged with studying and evaluating existing approaches to

28  pro se litigation in the federal courts, exploring possible alternative or additional

-4-

1  approaches, soliciting feedback, and making recommendations to the Ninth Circuit

2  Judicial Council and its courts and the bar with respect to the management of pro se cases

3  and assistance to self-represented litigants. Another objective of the Task Force was to

4  identify the needs of pro se litigants and to aid in the development and monitoring of pro

5  se programs.

6      The Task Force Report recognized that pro se litigants are generally at a distinct

7  disadvantaged in pursuing their claims. (Exhibit "E", Page 12, ¶ 1, Task Force Report).

8  The recommendations suggested in the Task Force's Report set out to level the playing

9  field for unrepresented litigants by emphasizing that pro se litigants who submit their

10  cases to the courts for determination, are entitled to the same due process of law as those

11  represented by counsel. (Exhibit "F", Page 13, ¶ 2, Task Force Report). For this Court to

12  deny Petitioner's instant motion would be contrary to the spirit and intent of the Ninth

13  Circuit's clear mandate governing equal access to the court as set forth in the Task Force

14  Report.

15     **B.**   **Petitioner Will be Denied Due Process and Equal Protection Under the U. S. Constitution Should He Not be Permitted to E-File Documents In the Instant Action.**

16

17      Technology has also changed the scope of the judiciary's responsibility to preserve

18  the American tradition of open courts. Now, thanks to the World Wide Web, courts have

19  the opportunity to enhance the public's ability to meaningfully observe and participate in

20  the judicial process.

21      In the 21st century, citizens have the option of going to the courthouse to access

22  court records or documents, or visiting a virtual courthouse where information is available

23  at the click of a mouse. While incarcerated litigants are at a particular disadvantage

24  because the nature of their confinement substantially restricts their access to vital

25  fundamental resources such as typewriters, paper, research materials, etc.; electronic

26  filing, coupled with other "virtual" resources, if administered properly and with

27  appropriate safeguards, has the potential of allow pro per incarcerated litigants substantial

28  access to the courts.

-5-

1  The Task Force recognized the various challenges associated with allowing pro per

2  incarcerated litigants the ability to e-file and addressed those concerns in the Report.

3  (Exhibit "F", Page 42, ¶ 5, Task Force Report). The Report suggests various scenarios

4  under which pro per incarcerated litigants can be permitted access to the PACER and

5  CM/ECF systems. (Exhibit "F", Page 42, ¶ 6, Task Force Report)

6  Considering that the pending action is in the heart of the "Silicon Valley", it stands

7  to reason that the Court should take the lead in ensuring that pro se litigants are at the very

8  least permitted to electronically file documents should they so desire to litigate in this

9  fashion. The obvious restrictions of Petitioner's confinement and access to current legal

10  materials, will place him at a distinct disadvantage in pursuing his claim should the Court

11  deny the instant motion.

12  By granting Petitioner's instant motion to proceed with e-filing, this Court will

13  send a clear message that pro per litigants are given equal access to the courts of the 21st

14  Century, where e-filing will soon become the customary manner of filing documents.

15  **C.**    **Meaningful Access to the Courts in the 21st Century Requires the Courts to Permit All Litigants the Right to Electronically File Documents in Furtherance of Their Claim**

16

17  In the United States, inmates in both state and federal prisons are guaranteed

18  certain constitutional and civil rights. They include freedom from cruel and unusual

19  punishment, the right to due process, freedom of speech, freedom of religion, the right to

20  adequate medical care, freedom from racial discrimination, and the right of access to the

21  courts. Only in unusual circumstances and for the sake of safety and security may

22  limitations be imposed on these rights.

23  The existence of constitutional rights for any individual is dependent upon

24  mechanisms to uphold these rights and protect them from violation or denial.

25  Consequently, access to the courts is a pivotal right upon which the vindication of

26  prisoners' other constitutional protections depends. It is important to understand that, with

27  the exception of the U.S. Constitution, federal and state statutes do not guarantee any

28  significant rights for convicted prisoners. Most of the rights now guaranteed to prisoners,

-6-

1   including the civil rights extended to all other U.S. citizens, are the result of judicial

2   rulings rather than legislative or administrative action.

3       During the last three decades, the Unites States Supreme Court and lower federal

4   courts have recognized and confirmed these rights and ended the existing "hands-off"

5   policy previously applied by courts to inmates. Although federal courts had long received

6   habeas corpus petitions, until the 1960s the "hands-off" policy prevented the judiciary

7   from considering other claims from prisoners. The courts lent great discretion to prison

8   administrators regarding the internal management of prisons which led to extensive abuse.

9       The fundamental constitutional right of access to the courts requires prison

10  authorities to assist inmates in the preparation and filing of meaningful legal papers by

11  providing prisoners with adequate law libraries or adequate assistance from persons

12  trained in the law. *Bounds v. Smith* (430 U.S. 817). The 1977 landmark Supreme Court

13  decision, which led to the establishment of law libraries in most major U.S. prisons was

14  the culmination of thirty-six years of significant federal court decisions that markedly

15  enhanced a prisoner's ability to seek redress of complaints before courts of law. Prior

16  decisions of the Court had held that inmates could not be required to submit habeas corpus

17  petitions for prison administration approval before sending them to the courts. *Bounds*

18  also held that a state could not condition the right to appeal a conviction or the right to file

19  a petition for habeas corpus or other form of post-conviction relief on the payment of a

20  filing fee when the petitioner had no means to pay. Further, the Court had held that the

21  right to legal assistance, especially in the context of the constitutional right to the writ of

22  habeas corpus, meant that in the absence of other adequate assistance, a state may not

23  deny a prisoner the right to seek and obtain legal assistance from another prisoner, a

24  "jailhouse lawyer", and it must make available certain minimum legal materials.

25      While the *Bounds* decision did not yet envision that litigants would one day have

26  the ability to electronically file documents with the court; Plaintiff asserts that to deny him

27  the opportunity to electronically file his documents in the instant action would violate the

28  spirit and intent as set forth in the *Bounds* decision.

-7-

1   Further, the *Bounds* Court explicitly stated that access to the courts must be

2   guaranteed to totally and functionally illiterate inmates and that the right of access is

3   founded in the Due Process Clause (the Eighth Amendment to the Constitution). Through

4   these Supreme Court decisions a new judicial philosophy gradually evolved away from

5   the earlier "hands-off" position. It was seen as the affirmative responsibility of state

6   officials to guarantee satisfactory means of legal assistance to all prisoners, i.e., the state

7   was to take a proactive stance in this area and no longer just refrain from obstructing or

8   impeding access. Still unclear was what options or methods the states were to adopt to

9   provide this access. In *Bounds* supra, the Supreme Court gave the states several options to

10  pick from in deciding how to fulfill their constitutional mandate.

11  The three most widely used methods of compliance today are 1) establishing law

12  school clinical programs where law students, under the supervision of attorneys, assist

13  inmates, 2) employing full-time staff attorneys or contracting with prisoner assistance

14  organizations and 3) providing adequate law libraries.  During the last decade, however,

15  most states have as a result of federal district and appellate court rulings been forced to

16  provide more than one option or a combination of options, since no single method

17  guarantees access for all prisoners. By so ruling, the courts have given a broader and more

18  liberal interpretation to *Bounds* supra, emphasizing the key phrase of "meaningful" access

19  to the courts.

20  **V.    CONCLUSION**

21  Petitioner asserts that if the court denies the instant motion, it will substantially

22  affect his ability to challenge the 25-year sentence, which he contends was improperly

23  imposed.  Petitioner further asserts that it would be fundamentally unjust and constitute an

24  unfair advantage to allow one party in a litigation to enjoy the benefits of electronic filing

25  while denying another party such benefit.  Petitioner brings this action in good faith,

26  / / /

27  / / /

28  / / /

-8-

1   believes that his case has merit and asserts that the best manner in which to present such

2   evidence to the court is by means of electronic filing. Petitioner therefore respectfully

3   prays that the court grant the instant motion allowing him to electronically file any future

4   documents with this court.

5   DATED: June 23, 2008          By: _____

6                                      MICHAEL DAVID GUTIERREZ
                                        Petitioner in Propria Persona

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PERMISSION TO
ELECTRONICALLY FILE DOCUMENTS

In The Court Of Appeal Of The State Of California

184

Sixth Appellate District

San Jose, California

<u>MONDAY, NOVEMBER 20, 2006</u>

H029590   PEOPLE v. MCKINLEY
    The judgment is affirmed.  The superior court is directed to prepare an amended abstract of judgment to reflect the imposition of a section 12022, subdivision (b)(1) enhancement, not a section 12022.7, subdivision (a) enhancement, as to Count Two. (not published)
(Mihara, J.; We concur: Bamattre-Manoukian, Acting P.J., McAdams, J.)
Filed November 20, 2006

H028989   PEOPLE v. BLAN
    The judgment is affirmed. (not published)
(Rushing, P.J.; We concur: Premo, J., Elia, J.)
Filed November 20, 2006

H029528   CONRAD DELL'OCA, as Trustee, etc., et al. v. UBS SECURITIES LLC
    The judgment is affirmed. (not published)
(Rushing, P.J.; We concur: Premo, J., Elia, J.)
Filed November 20, 2006

H028515   PEOPLE v. GUTIERREZ
    The judgment is affirmed.  The trial court is directed to correct the abstract of judgment to reflect that the enhancement on count 2 under Penal Code section 12022.7 is stayed.  (not published)
(Rushing, P.J.; We concur: Premo, J., Elia, J.)
Filed November 20, 2006

H029369   PEOPLE v. RODRIGUEZ
    The judgment is affirmed. (not published)
(Rushing, P.J.; We concur: Premo, J., Elia, J.)
Filed November 20, 2006

H029741   ROSENVICK, INC. v. MORTGAGETREE LENDING
    The judgment is reversed and the matter is remanded to the trial court with directions to modify the judgment so that the total award to Rosenvick is in the amount of $25,000. (not published)
(Rushing, P.J.; We concur: Premo, J., Elia, J.)
Filed November 20, 2006

H028910   PEOPLE v. WILSON
    The judgment is affirmed. (not published)
(Bamattre-Manoukian, Acting P.J.; We concur: Mihara, J., McAdams, J.)
Filed November 20, 2006

A – 10

# CALIFORNIA APPELLATE COURTS

Case Information



| | |
|---|---|
| Supreme Court | **Supreme Court** |
| Welcome | Court data last updated: 01/08/2008 03:53 PM |
| Search | **Case Summary**   **Docket**   **Briefs** |
| E-mail | **Disposition**   **Parties and Attorneys**   **Lower Court** |
| Calendar | |
| Help | **Docket (Register of Actions)** |
| Opinions | **PEOPLE v. GUTIERREZ** |

Change court

**Case Number S149143**

| Date | Description | Notes |
|---|---|---|
| 12/29/2006 | Petition for review filed | Michael Gutierrez, defendant and appellant David Stanley, C/A appointed counsel c/a rec req |
| 01/12/2007 | Received Court of Appeal record | file jacket/briefs/accordian file |
| 02/07/2007 | Petition for review denied | |

**Click here** to request automatic e-mail notifications about this case.

© 2007 Judicial Council of California

C|C home

ß— 11

E-Filing, HABEAS, ProSe

# U.S. District Court
## California Northern District (San Jose)
### CIVIL DOCKET FOR CASE #: 5:07-cv-03668-RMW

Gutierrez v. Yates
Assigned to: Hon. Ronald M. Whyte
Cause: 28:2254 Petition for Writ of Habeas Corpus (State)

Date Filed: 07/17/2007
Jury Demand: None
Nature of Suit: 530 Habeas Corpus (General)
Jurisdiction: Federal Question

**Petitioner**

**Michael David Gutierrez**                represented by    **Michael David Gutierrez**
V-68887
Pleasant Valley State Prison
Facility A-4-141
P.O. Box 8501
Coalinga, CA 93210
PRO SE

V.

**Respondent**

**James A. Yates**                represented by    **Allen Robert Crown**
*Warden, Department of Corrections,*            Attorney General's Office
*Pleasant Valley State Prison*            P.O. Box 944255
1300 I Street
Sacramento, CA 94244-2550
916-323-1940
Email: allen.crown@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/17/2007 | 1 | PETITION for Writ of Habeas Corpus; No Process; In Forma Pauperis pending. Filed by Michael David Gutierrez. (dhm, COURT STAFF) (Filed on 7/17/2007) (Entered: 07/19/2007) |
| 07/17/2007 | 2 | MOTION for Leave to Proceed in forma pauperis filed by Michael David Gutierrez. (dhm, COURT STAFF) (Filed on 7/17/2007) (Entered: 07/19/2007) |
| 07/17/2007 | 3 | EX PARTE MOTION to Appoint Counsel; Memorandum of Points and Authorities; Declaration of Michael David Gutierrez in support filed by Michael David Gutierrez. (dhm, COURT STAFF) (Filed on 7/17/2007) |

C - 12
6/16/2008

| | | |
|---|---|---|
| | | (Entered: 07/19/2007) |
| 07/17/2007 | 4 | CLERK'S NOTICE re completion of In Forma Pauperis affidavit or payment of filing fee due within 30 days. (dhm, COURT STAFF) (Filed on 7/17/2007) (Entered: 07/19/2007) |
| 07/17/2007 | | CASE DESIGNATED for Electronic Filing. (dhm, COURT STAFF) (Filed on 7/17/2007) (Entered: 07/22/2007) |
| 08/14/2007 | | Received three conformed copies of 1 Petition for Writ of Habeas Corpus by Michael David Gutierrez. Copies are stamped "original filed 7/17/2007" (dhm, COURT STAFF) (Filed on 8/14/2007) (Entered: 08/15/2007) |
| 08/14/2007 | 5 | MOTION for Leave to Proceed in forma pauperis filed by Michael David Gutierrez. (dhm, COURT STAFF) (Filed on 8/14/2007) (Entered: 08/17/2007) |
| 02/12/2008 | 6 | ORDER by Judge Ronald M. Whyte denying without prejudice 3 Motion to Appoint Counsel ; granting 2 , 5 Motions for Leave to Proceed in forma pauperis; ORDER TO SHOW CAUSE (dhm, COURT STAFF) (Filed on 2/12/2008) (cjc, COURT STAFF). (Entered: 02/12/2008) |
| 03/31/2008 | | Copy of Petition and Order to Show Cause sent by certified mail to respondent and the State Attorney General's office (dhm, COURT STAFF) (Filed on 3/31/2008) (Entered: 03/31/2008) |
| 04/14/2008 | 7 | Response to Order to Show Cause byJames A. Yates. (Attachments: # 1 Memorandum of Points and Authorities in Support of Answer, # 2 Proof of Service)(Crown, Allen) (Filed on 4/14/2008) (Entered: 04/14/2008) |
| 04/14/2008 | 8 | *** FILED IN ERROR. PLEASE REFER TO DOCUMENT 9 . *** EXHIBITS re 7 Response to Order to Show Cause *Notice of Lodging Exhibits with Court* filed byJames A. Yates. (Attachments: # 1 Proof of Service)(Related document(s) 7 ) (Crown, Allen) (Filed on 4/14/2008) Modified on 4/15/2008 (feriab, COURT STAFF). (Entered: 04/14/2008) |
| 04/14/2008 | 9 | EXHIBITS re 7 Response to Order to Show Cause *Notice of Lodging Exhibits with Court* filed byJames A. Yates. (Attachments: # 1 Proof of Service)(Related document(s) 7 ) (Crown, Allen) (Filed on 4/14/2008) (Entered: 04/14/2008) |
| 04/14/2008 | 10 | EXHIBIT A in Support of 7 Response to Order to Show Cause filed by James A. Yates. (Related document(s) 7 ) (dhm, COURT STAFF) (Filed on 4/14/2008) (Entered: 04/16/2008) |
| 04/14/2008 | 11 | EXHIBIT B (Part 1) in Support of 7 Response to Order to Show Cause filed by James A. Yates. (Related document(s) 7 ) (dhm, COURT STAFF) (Filed on 4/14/2008) (Entered: 04/16/2008) |
| 04/14/2008 | 12 | EXHIBIT B (Part 2) in Support of 7 Response to Order to Show Cause filed by James A. Yates. (Related document(s) 7 ) (dhm, COURT STAFF) (Filed on 4/14/2008) (Entered: 04/16/2008) |
| 04/14/2008 | 13 | EXHIBIT C through H in support of 7 Response to Order to Show Cause filed by James A. Yates. (Related document(s) 7 ) (dhm, COURT STAFF) (Filed on 4/14/2008) (Entered: 04/16/2008) |

C - 13

| 05/19/2008 | 14 | Notice of Ex Parte Motion of Declaration of Michael David Gutierrez, in Support of Request for a Court Order for an Enlargement of Time to File Petitioner's Traverse (Civil L.R.6-1,3) & Civil L.R.7-10) filed by Michael David Gutierrez. (cfe, Court Staff) (Filed on 5/19/2008) (Entered: 05/20/2008) |
| --- | --- | --- |
| 06/12/2008 | 15 | ORDER by Judge Ronald M. Whyte Granting 14 Motion for Extention of Time. (jg, COURT STAFF) (Filed on 6/12/2008) (Entered: 06/12/2008) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| Transaction Receipt | | | |
| 06/16/2008 15:30:43 | | | |
| PACER Login: | lb0594 | Client Code: | 28190-00019 |
| Description: | Docket Report | Search Criteria: | 5:07-cv-03668-RMW |
| Billable Pages: | 2 | Cost: | 0.16 |

C - 1

6/16/2008



# FINAL REPORT

Ninth Circuit Judicial Council
Task Force on Self-Represented Litigants

October 2005

# EXECUTIVE SUMMARY

## Ninth Circuit Task Force on Self-Represented Litigants

The Task Force on Self-Represented Litigants was created by the Ninth Circuit Judicial Council in late 2002, in recognition of the number of cases in all courts in the circuit in which one or more parties appeared without counsel, either on a temporary basis or throughout the course of litigation. Chief Judge Mary Schroeder had also observed: 1) although there continued to be a steady stream of filings by pro se prisoners, the incidence of filings by non-prisoner pro se litigants in cases ranging from breach of contract to civil rights cases was on the increase, and 2) many states in this circuit and elsewhere had already developed a variety of innovations to cope with a corresponding pro se phenomenon in their court systems.

The Task Force was charged with studying and evaluating existing approaches to pro se litigation in the federal courts, exploring possible alternative or additional approaches, soliciting feedback, and making recommendations to the Ninth Circuit Judicial Council and its courts and the bar with respect to the management of pro se cases and assistance to self-represented litigants. Another charge was to aid in the development and monitoring of pro se programs. However, the Task Force, which represents a cross-section of judges, court staff, and attorneys of the Ninth Circuit, ultimately concluded that implementation of its recommendations could best be handled by a smaller committee to be appointed following acceptance of this Report.

The Task Force has been impressed with the many state court innovations in this field. However, it recognizes that many of those innovations are tailored for the subject matter jurisdiction of those courts and do not easily translate to the federal courts' diverse and complex case loads. The challenge has been to develop recommendations that are sufficiently focused to be meaningful but sufficiently general to allow for the specific needs and court culture of each of the 15 districts within the circuit. One size definitely does not fit all. Therefore, the following recommendations are offered as options for the districts' consideration, to be explored as each district deems appropriate given its needs, size, demographics, and legal culture.

One thing became clear as the Task Force undertook to fulfill its mission. There is a dearth of data available on a national basis on the dimensions of the pro se litigation explosion in federal courts. The lack of statistical information is particularly great with respect to non-prisoner filings. Nonetheless the Task Force was able to gather a great deal of information before framing its recommendations; much of it is contained in Appendices A to O to this Report. Additional information is on file at the Office of the Circuit Executive. In light of the continuing good work that is being done in the area of pro se case management, the Task Force's concluding recommendation includes the suggestion that the smaller working committee serve as a clearinghouse for such information and seek to improve the collection of data on pro se cases.

The body of this Report contains a full discussion of the background for the Task Force's charge and an analysis of the information that led to its recommendations. We commend the full text, including the Appendices, to the readers' attention. Following is a list of the recommendations made by the six subcommittees of the Task Force and adopted by the full Task Force.

D — 16

# FINAL REPORT

Ninth Circuit Judicial Council
Task Force on Self-Represented Litigants

October 2005

Attorneys are trained and may have had years of practice and experience in finding the relevant law and in identifying and presenting the facts that best support their clients' positions. A person appearing in propria persona has multiple disadvantages as a result of lack of legal training and experience and lack of objectivity about the subject matter of the litigation. It is no accident that patients seek out surgeons with experience or that doctors do not treat their family members because emotional involvement interferes with their medical judgment. By the same token, it is unavoidable that pro se litigants are disadvantaged by their lack of training and objectivity. The pro se litigant's knowledge of the facts and passion for the cause may overcome the disadvantages in some cases, but the disadvantages remain significant impediments to success.

Several people who commented on the work of the Task Force urged the development of forms and other fill-in-the-blank documents to take the place of pleadings and other court documents. Law is a learned profession and is increasingly complex as it mirrors the complexities of the modern world. Although some specific legal issues lend themselves to resolution through form documents, most do not. The federal courts have only limited subject matter jurisdiction, and the types of issues that are litigated in federal court are especially likely to be difficult and multi-faceted. There is little the Task Force can do to alter these realities, but the Task Force has made recommendations when possible.

Finally, the laws of the United States and of all 50 states are inconsistent with the proposal that most or all lawsuits should proceed promptly to jury trial, with the role of the judge and pretrial motion practice severely limited. Such a judicial system can be contemplated but does not exist anywhere in the United States; those who seek the adoption of such a system of justice must seek legislative repeal of existing laws and enactment of very different laws. The Task Force was created by the existing judicial system and assigned the duty to work to improve that existing system. The Task Force cannot bring about fundamental changes in the existing judicial system and has not sought to do so.

## C. Alternatives Beyond the Scope of the Task Force

Philosophically, one approach to the challenge of pro se litigation would be a complete overhaul of the judicial system. Thus, one could revamp the system to create two tiers: 1) a first tier open only to litigants who had retained or been assigned counsel and would proceed under the rules as currently drafted, and 2) a second tier, operable when at least one party was pro se, in which the case would be exempted from the rules and instead be subjected to a different system. Three options for "second tier" justice come to mind. First, all pro se plaintiffs could be required to file their complaints with an administrative judge who would interrogate them to draw out the relevant facts, assign a public employee investigator to investigate those facts and evaluate the evidence for the administrative judge, and determine whether the case has sufficient potential merit to proceed. Otherwise, the case would be dismissed, perhaps subject to some internal administrative appeal procedure to check against errors. Second, small claims court procedures could be made universally applicable to unrepresented litigants regardless of the amount in controversy. Third, pro se cases could proceed in court, but without enforcement of the Federal Rules of Civil Procedure. Instead, a pre-Rules system of pleading could be reinstated. Under this "precode" practice, very little discovery was allowed. Most lawyers and judges believe that the primary cost and delay in the current system lies in liberal discovery.

E-18

# FINAL REPORT

Ninth Circuit Judicial Council
Task Force on Self-Represented Litigants

October 2005

### D. Feasible Alternatives to the Challenge of Pro Se Litigation

Realistically, the Task Force recognized that no such major changes in the administration of justice were likely to result from its work. The federal rules are here to stay. The Task Force therefore concentrated its efforts on ways of assisting the unrepresented litigants and the courts under the present system of justice. One significant emphasis has been on finding lawyers for those who want them but cannot afford them or do not know how to find them. We also considered various unbundling proposals and related procedures to involve lawyers to the greatest extent possible. Recognizing that it is unrealistic to expect that a lawyer will take every case, or that the litigant will always accept a lawyer, we studied various ways that courts can perform the screening function and provide the reality check that lawyers would otherwise provide, without a significant impact on court staff and budgets. In this regard we have noted that Congress has expressly provided for increased screening in two situations: where litigants are prisoners or wish to proceed in forma pauperis. We explored ways consistent with the Constitution and existing statutes to extend pre-service screening to other aspects of pro se litigation. For example, we carefully considered those cases dismissed for lack of subject matter jurisdiction because they were frivolous. We also looked at the quantity and quality of materials furnished to various classes of litigants to familiarize them with court procedures and considered the tension between providing information and legal advice.[1]

Having recognized, however, that statutory or other nationwide changes to the administration of justice are unlikely to occur as a result of its work, the Task Force still seeks to encourage innovation district-wide and/or circuit-wide, even if on a pilot basis. Many of the recommendations that follow lend themselves to such experimentation. Ultimately the challenge presented by the unrepresented litigant is to provide due process of law to all the men and women who submit their cases to the courts for determination, not just those who are represented by counsel. It is in that spirit that the Task Force presents this Report.

---

[1]Although the issue of language barriers affects pro se litigants' access to the courts, it was deemed outside the scope of the Task Force's mission. The Task Force acknowledges, however, that there is a need for future consideration of language barriers, their impact on all forms of interaction between citizens and the judiciary, and possible solutions.

F—20

# FINAL REPORT

Ninth Circuit Judicial Council
Task Force on Self-Represented Litigants

October 2005

### III. Coordination with Prisons and Prosecutors

#### A. Subcommittee Activities

The subcommittee conducted a survey of all prisons in the Ninth Circuit. The prison officials who responded indicated that they have systems set up for the purpose of allowing inmates to grieve various prison decisions, as well as to file lawsuits in court. Most, if not all, provide assistance of paralegals to help inmates file their claims.

The legal system and prisoners' access to it, however, undoubtedly varies with each institution as to the type, quantity, and quality of help provided. Some grievance procedures are more cumbersome than others. The availability of legal materials and assistance also varies. The survey did not take into account the varying educational backgrounds and mental health conditions of inmates. These variables play a part in the effectiveness of an inmate's access to the legal system. Additional information about the grievance procedures and available resources is contained in Appendix J.

The courts' own pro se law clerks also provide a valuable resource in the orderly processing of prisoner claims. The review of pleadings by specialized staff results in claims that are understandable and that have already been reviewed to see if a cause of action is actually stated in the complaint. It is therefore important to point out to defendant agencies whenever possible that far more cases are screened out at the pleading stage than are allowed to proceed to service of process or discovery. Furthermore, in some districts an order goes out requesting waiver of service of process from counsel believed to represent the defendant(s) with the order requiring that the counsel inform the court if counsel does not represent the defendant(s).

Concerns were raised about the ability of prisoners to send and receive legal mail. This becomes more of a problem when prisoners are transferred from prison to prison and the mail has some difficulty catching up with them. The subcommittee did not determine a feasible solution to this problem.

Everyone agrees that to the extent possible typed pleadings are preferable to written ones. It should be noted that the use of the typewriter by most prisoners is prohibited because parts of the typewriter can be used as weapons. The suggestion was made that the use of computers as word processors, or eventually for e-filing, might solve this problem.

There is a divergence of views on the desirability of prisoner access to PACER and Case Management/Electronic Case Filing systems, and the districts vary widely in their approach to both prisoner and non-prisoner pro se electronic filing. Prisons understandably seek to restrict or limit access to the Internet, and some clerks fear possible CM/ECF tampering by pro se litigants. Nevertheless the Task Force believes that the subject is worthy of further discussion. In prisons, for example, Internet access could be restricted to court sites and appropriate safeguards could be developed. Alternatively, a legal assistant might be designated to handle electronic filing for prisoners and to obtain docket sheets and other case information electronically.

Also, on an ad hoc basis, members of the subcommittee spoke with various agencies regarding ways in which people in the legal system could be more helpful to each other. One proposal that the subcommittee reviewed and submits for the reader's consideration is a prison

G - 22

# FINAL REPORT

Ninth Circuit Judicial Council
Task Force on Self-Represented Litigants

October 2005

### III. Coordination with Prisons and Prosecutors

#### A. Subcommittee Activities

The subcommittee conducted a survey of all prisons in the Ninth Circuit. The prison officials who responded indicated that they have systems set up for the purpose of allowing inmates to grieve various prison decisions, as well as to file lawsuits in court. Most, if not all, provide assistance of paralegals to help inmates file their claims.

The legal system and prisoners' access to it, however, undoubtedly varies with each institution as to the type, quantity, and quality of help provided. Some grievance procedures are more cumbersome than others. The availability of legal materials and assistance also varies. The survey did not take into account the varying educational backgrounds and mental health conditions of inmates. These variables play a part in the effectiveness of an inmate's access to the legal system. Additional information about the grievance procedures and available resources is contained in Appendix J.

The courts' own pro se law clerks also provide a valuable resource in the orderly processing of prisoner claims. The review of pleadings by specialized staff results in claims that are understandable and that have already been reviewed to see if a cause of action is actually stated in the complaint. It is therefore important to point out to defendant agencies whenever possible that far more cases are screened out at the pleading stage than are allowed to proceed to service of process or discovery. Furthermore, in some districts an order goes out requesting waiver of service of process from counsel believed to represent the defendant(s) with the order requiring that the counsel inform the court if counsel does not represent the defendant(s).

Concerns were raised about the ability of prisoners to send and receive legal mail. This becomes more of a problem when prisoners are transferred from prison to prison and the mail has some difficulty catching up with them. The subcommittee did not determine a feasible solution to this problem.

Everyone agrees that to the extent possible typed pleadings are preferable to written ones. It should be noted that the use of the typewriter by most prisoners is prohibited because parts of the typewriter can be used as weapons. The suggestion was made that the use of computers as word processors, or eventually for e-filing, might solve this problem.

There is a divergence of views on the desirability of prisoner access to PACER and Case Management/Electronic Case Filing systems, and the districts vary widely in their approach to both prisoner and non-prisoner pro se electronic filing. Prisons understandably seek to restrict or limit access to the Internet, and some clerks fear possible CM/ECF tampering by pro se litigants. Nevertheless the Task Force believes that the subject is worthy of further discussion. In prisons, for example, Internet access could be restricted to court sites and appropriate safeguards could be developed. Alternatively, a legal assistant might be designated to handle electronic filing for prisoners and to obtain docket sheets and other case information electronically.

Also, on an ad hoc basis, members of the subcommittee spoke with various agencies regarding ways in which people in the legal system could be more helpful to each other. One proposal that the subcommittee reviewed and submits for the reader's consideration is a prison

# DECLARTION OF SERVICE BY U. S. MAIL

*Gutierrez v. Yates*, Case No. C 07-3668 RMW (PR)

I declare:

I am presently incarcerated at. Pleasant Valley State Prison.  I am over the age of 18, and a party to the within action.  My address is: A-4-141, Box, 8501, Coalinga, California.

On June $23$, 2008, I served the foregoing document described as:

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PERMISSION TO ELECTRONICALLY FILE DOCUMENTS

on the interested parties by U. S. Mail a true copy as follows:

Attorneys for Respondent

EDMUND G. BROWN JR., Esq.
Attorney General of the State of California
DANE R. GILLETTE., Esq.
GERALD A. ENGLER., Esq.
GREGORY A. OTT., Esq.
ALLEN R. CROWN., Esq.
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
Telephone:   (415) 703-5847
Fax:          (415) 703-1234

☒      **VIA U.S. MAIL:** 🖂

On June $23$, 2008, at , California, I deposited the above described document, with the U.S. postal service with postage thereon fully prepaid and addressed to the parties listed above.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and was executed on June $23$, 2008 at Coalinga, California.

Michael D. Gutierrez
_____
Type or Print Name

_____
Signature