*E-FILED - 7/14/09*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DAVID GUTIERREZ,<br><br>   Petitioner,<br>vs.<br><br>JAMES A. YATES, Warden,<br><br>   Respondent. | No. C 07-03668 RMW (PR)<br><br>ORDER DENYING PETITION FOR<br>WRIT OF HABEAS CORPUS |

Petitioner, a California prisoner proceeding pro se, filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the petition should not be granted. Respondent filed an answer and a supporting memorandum of points and authorities addressing the merits of the petition. Petitioner filed a traverse. Having reviewed the papers and the underlying record, the court concludes that petitioner is not entitled to habeas corpus relief and will deny the petition.

**PROCEDURAL BACKGROUND**

On November 23, 2004, a Santa Clara Superior Court jury convicted petitioner of carjacking pursuant to California Penal Code § 215 and assault with a deadly weapon pursuant to Penal Code § 245(a)(1), with various enhancements. Further, the court found a prior conviction enhancement to be true. On February 17, 2005, petitioner was

sentenced to a term of twenty-six years in prison.

Petitioner appealed the judgment. The state appellate court affirmed the judgment in a reasoned opinion on November 20, 2006. The state supreme court summarily denied a petition for review on February 7, 2007. Petitioner filed the instant federal habeas petition on July 17, 2007.

## FACTUAL BACKGROUND

Petitioner does not dispute the following facts, which are taken from the unpublished opinion of the California Court of Appeal[1]:

> Anthony Lionetti was driving a cab in the early morning of January 7, 2004, when he was flagged down by a Hispanic male who appeared unshaven and in his late 20s. The man asked Lionetti to drive him to a particular intersection, but when they arrived there the man asked him to drive to Virginia Street. Recognizing it as a dead-end street, Lionetti became nervous and stopped the car in front of a house. The passenger got out of the cab and urinated against a tree. Lionetti got out, approached the man, and asked for his fare, which was about $18 or $19. The next thing Lionetti remembered, he was on the ground. The passenger had gotten into the cab and [driven it over] Lionetti . . . . Lionetti called his dispatcher in a scared voice, saying he was in trouble and needed police and an ambulance. The dispatcher heard a thump, probably from Lionetti being hit by the car a second time, and the phone went dead.
>
> The dispatched called 911. Police officers arrived at the scene to find Lionetti face down in the street. He was awake but in pain, and very upset about the taking of the cab. He coherently described what had happened, including the passenger's description and his use of the name "Mike." He said that the passenger had displayed a folding knife when Lionetti demanded his fare. The empty cab was found about a block away. Fingerprints later lifted from it did not match [petitioner], Lionetti, or several police officers.
>
> [Petitioner]'s sister, Denise Garduno, testified that on the morning of January 7, 2004, she was visiting another brother at his apartment on Virginia Street when [petitioner] showed up looking for a place to stay. When told that he could not stay there, he became angry and upset, pulling out a folding knife and holding it in his hand. Ms. Garduno called 911 because she was concerned that someone might get hurt. While she and [petitioner] were outside the building there was a commotion with ambulances and sirens at the corner. [Petitioner] seemed nervous when a police car went by. Ms. Garduno did not recall telling police that [petitioner] had hidden behind a car, but testified that he went behind a car and might have tripped. She said she was afraid that the police might harass [petitioner] and beat him again.
>
> Officer Vaughn went to the area in question in response to Ms.

---

[1] People v. Gutierrez, No. H028515 (November 20, 2006) (Resp't Ex. F at 2-3).

Garduno's 911 call. [Petitioner] was taken into custody, transported to the hospital, and displayed to Lionetti, who promptly identified him as his assailant. Later that morning Lionetti told the operations manager for the cab company what had happened, and that he was sure the guy police had brought to the hospital was the perpetrator.

In late January or early February, Lionetti developed medical complications, in response to which doctors placed him into a drug-induced coma for three months. When he regained consciousness his memory of the events in the hospital was impaired. At trial he was unable to identify [petitioner] as his assailant, but testified that he remembered police bringing the assailant to the hospital and that he then identified that person as the perpetrator.

## LEGAL CLAIMS

Petitioner asserts the following claims for habeas relief[2]: (1) petitioner's federal constitutional right to confront witnesses against him was violated when the trial court allowed testimony that the victim had identified petitioner in person soon after the incident, but was later unable to identify petitioner at trial due to memory loss; (2) petitioner's federal constitutional right to due process was violated when the trial court excluded evidence which provided an alternative reason for petitioner avoiding contact with the police on January 7, 2004; and (3) the cumulative errors were prejudicial.

## DISCUSSION

**A.   Standard of Review**

Because the instant petition was filed after April 24, 1996, it is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), which imposes significant restrictions on the scope of federal habeas corpus proceedings. Under AEDPA, a federal court may not grant habeas relief with respect to a state court proceeding unless the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the

---

[2] Petitioner appears to raise the following new claims in his traverse: (1) denial of the right to present a defense because Lionetti's nurse did not testify at trial on petitioner's behalf; and (2) violation of due process by the hospital "show-up" identification procedure. However, "[a] traverse is not the proper pleading to raise additional grounds for relief." See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994). Accordingly, this court will not address these claims.

Order Denying Petition for Writ of Habeas Corpus
G:\PROSEEX1\J Murai\Gutierrez_order.wpd

3

United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The "objectively unreasonable" standard does not equate to "clear error" because "[t]hese two standards . . . are not the same. The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of

Order Denying Petition for Writ of Habeas Corpus
G:\PROSEEX1\J Murai\Gutierrez_order.wpd

4

1  correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

2  **B.     Analysis of Legal Claims**

3      1.     <u>Confrontation Clause Violation</u>

4      Petitioner claims that his Sixth Amendment right to confront witnesses against him
5  was violated because the trial court admitted testimony concerning Lionetti's hospital
6  identification of petitioner as the perpetrator.  (Pet. at 15.)  Before trial, petitioner objected
7  to the admission of the hospital identification as impermissible hearsay.  (Resp't Ex. B at
8  20-25.)  The district attorney had sought to admit the hospital identification because the
9  victim had an insufficient recollection of the incident to identify petitioner at trial.
10 (Resp't Ex. F at 3.)  The trial court overruled the objection to the use of the evidence
11 pursuant to Cal. Evidence Code § 1237.  (Resp't Ex. B at 25.)

12     The Confrontation Clause of the Sixth Amendment provides that in criminal cases
13 the accused has the right to "be confronted with witnesses against him."  U.S. Const.
14 amend. VI.  The federal confrontation right applies to the states through the Fourteenth
15 Amendment.  <u>Pointer v. Texas</u>, 380 U.S. 400, 403 (1965).  A primary interest secured by
16 the Confrontation Clause is the right of cross-examination.  See <u>Davis v. Alaska</u>, 415 U.S.
17 308, 315-16 (1974).  However, "the confrontation clause guarantees only 'an *opportunity*
18 for effective cross-examination, not cross-examination that is effective in whatever way,
19 and to whatever extent, the defense might wish.'"  <u>United States v. Owens</u>, 484 U.S. 554,
20 559 (1988) (emphasis in original) (quoting <u>Kentucky v. Sincer</u>, 482 U.S. 730, 739
21 (1987)).

22     The Confrontation Clause applies to all "testimonial" statements.  See <u>Crawford v.
23 Washington</u>, 541 U.S. 36, 50-51 (2004).  "Testimony . . . is typically a solemn declaration
24 or affirmation made for the purpose of establishing or proving some fact."  <u>Id.</u> at 51
25 (citations and quotation marks omitted).  The Confrontation Clause applies not only to in-
26 court testimony but also to out-of-court statements introduced at trial, i.e., "testimonial
27 hearsay," regardless of the admissibility of the statements under state laws of evidence.
28 <u>Id.</u> at 50-51.  Out-of-court statements by witnesses that are testimonial hearsay are barred

under the Confrontation Clause unless (1) the witnesses are unavailable, and (2) the defendants had a prior opportunity to cross-examine the witnesses. Id. at 59. However, the Confrontation Clause does not bar the admission of testimonial hearsay when the declarant appears for cross-examination at trial. Id. at 59 n.9 (citing California v. Green, 399 U.S. 149, 162 (1970)). Furthermore, the Confrontation Clause is not violated by the admission of a prior identification by a witness who is unable, because of memory loss, to testify concerning the basis for the identification. Felix v. Mayle, 379 F.3d 612, 617-18 (9th Cir. 2004) (citing Owens, 484 U.S. at 564).

      The state appellate court applied Crawford and assumed that Lionetti's statement was testimonial, but concluded that exclusion of the statement was not warranted under the Confrontation Clause because Lionetti was available for, and subjected to, cross-examination at trial. (Resp't Ex. F at 4-5.)

      Next, the state court rejected petitioner's argument that the Confrontation Clause mandates that "the state of [the witness'] memory is such that the defendant is able to 'engage in meaningful cross-examination.'" (Id. (italics omitted).) The court found that petitioner's case was factually similar to Owens, which held that the Confrontation Clause does not require exclusion of pretrial statements concerning matters the declarant no longer recalls at trial. (Id. at 6.) Accordingly, the court concluded that "because the state made the declarant available for, and did nothing to impede, [petitioner]'s cross-examination of the witness," the trial court did not err in admitting Lionetti's hospital identification.

      This court finds that the state court's decision was neither contrary to nor an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). Whether or not Lionetti's hospital statement was testimonial, it was admissible under the Confrontation Clause since Lionetti appeared for cross-examination at trial. See Green, 399 U.S. at 162. Moreover, this court also agrees that the facts of the instant case are similar to Owens. As in Owens, Lionetti was unable to remember his assailant when he

1 testified during trial, but he did remember making a positive identification at the hospital.
2 See Owens, 484 U.S. at 556.  Therefore, under these circumstances, the admission of
3 Lionetti's hospital identification did not amount to a Sixth Amendment violation.  See id.
4 at 564.

5      Even if this court found that the statement was a violation, the error was harmless.
6 See United States v. Nielsen, 371 F.3d 574, 581 (9th Cir. 2004) (finding that
7 Confrontation Clause claims are subject to harmless error analysis); see also United States
8 v. Allen, 425 F.3d 1231, 1235 (9th Cir. 2005).  For purposes of federal habeas corpus
9 review, the standard applicable to violations of the Confrontation Clause is whether the
10 inadmissible evidence had an actual and prejudicial effect upon the jury.  See Hernandez
11 v. Small, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing Brecht v. Abrahamson, 507 U.S.
12 619, 637 (1993)).

13      In the instant case, there was independent and credible evidence that petitioner was
14 identified by Lionetti.  While in the hospital, Lionetti told David Logan, a manager of the
15 cab company, about the carjacking incident and how he had identified the man the police
16 brought to the hospital as his assailant.  (Resp't Ex. F at 3.)  Petitioner argues that this
17 conversation was "testimonial," and thus subject to the Confrontation Clause, because (1)
18 it can be considered a continuation of his statement to the police because it occurred
19 shortly after the show-up; or (2) it was a formal statement by an employee to an employer
20 rather than a casual remark to an acquaintance.  (Pet. at 16-17.)  The appellate court did
21 not address this issue.  (Resp't Ex. F at 5 n.2.)

22      This court finds that both of petitioner's arguments are without merit.  In Crawford,
23 the Supreme Court declined to provide a specific definition of "testimonial."  Crawford,
24 541 U.S. at 68. However, the Court did set a minimum as to what qualifies as a
25 "testimonial" statement:  (1) prior testimony at a preliminary hearing, before a grand jury,
26 or at a formal trial; and (2) police interrogations.  Id.  It is clear from the record that
27 Lionetti's statement to Logan does not rise to the level of a "testimonial" statement
28 because it occurred in a hospital (rather than some sort of adversarial judicial proceeding)

Order Denying Petition for Writ of Habeas Corpus
G:\PROSEEX1\J Murai\Gutierrez_order.wpd

1 and in the absence of police officers. Therefore, Lionetti's statement to Logan was non-
2 testimonial, and not subject to Confrontation Clause scrutiny. See id. Rather, the
3 admissibility of the statement was properly determined by state evidentiary rules. See id.
4 This court concludes that for purposes of federal habeas review, the admission of the
5 hospital identification did not have an actual and prejudicial effect on the jury because the
6 statement to Logan was admissible under state law. See Brecht, 507 U.S. at 637.
7 Accordingly, petitioner is not entitled to federal habeas relief on this claim.

       2.       Exclusion of Evidence Countering Consciousness-of-Guilt Evidence

9 Petitioner claims that his right to due process was violated because the trial court
10 excluded evidence that provided an alternative reason for petitioner attempting to avoid
11 contact with the police on January 7, 2004. (Pet. at 23.)
12 During trial, the prosecution offered evidence demonstrating that petitioner had
13 exhibited consciousness of guilt on the morning of January 7, 2004. (Resp't Ex. F at 10.)
14 Petitioner's sister, Denise Garduno, had made statements and given testimony to the
15 effect that "there was a commotion that morning with sirens and ambulances, and that
16 when a police car went by [petitioner] appeared nervous and ducked, hid, went, or
17 perhaps tripped behind a parked car." (Id.) In order to rebut the inference of
18 consciousness of guilt, defense counsel had sought to admit testimony by Garduno
19 regarding whether she knew of any other reason petitioner might have wanted to avoid
20 police contact. (Id.) The prosecution objected and the trial court found the evidence
21 speculative, sustaining the objection under California Evidence Code § 352, which grants
22 the trial judge broad discretion to exclude evidence where the probative value is
23 outweighed by the potential for wasting time, confusing the jury, or otherwise interfering
24 with a fair and efficient trial of the facts. (Id.) Petitioner asserts that Garduno would have
25 testified that petitioner's reason for wanting to avoid police was that he had been beaten
26 by police six months earlier. (Pet. at 23.)
27 "State and federal rulemakers have broad latitude under the Constitution to
28 establish rules excluding evidence from criminal trials." Holmes v. South Carolina,

1  547 U.S. 319, 324 (2006) (quotations and citations omitted); see also Montana v.
2  Egelhoff, 518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant
3  the right to present all relevant evidence).  This latitude is limited, however, by a
4  defendant's constitutional rights to due process and to present a defense, rights originating
5  in the Sixth and Fourteenth Amendments.  See Holmes, 547 U.S. at 324. "While the
6  Constitution prohibits the exclusion of defense evidence under rules that serve no
7  legitimate purpose or that are disproportionate to the ends that they are asserted to
8  promote, well-established rules of evidence permit trial judges to exclude evidence if its
9  probative value is outweighed by certain other factors such as unfair prejudice, confusion
10 of the issues, or potential to mislead the jury." Id. at 325-26; see Egelhoff,
11 518 U.S. at 42 (holding that the exclusion of evidence does not violate the Due Process
12 Clause unless "it offends some principle of justice so rooted in the traditions and
13 conscience of our people as to be ranked as fundamental").  The defendant, not the state,
14 bears the burden to demonstrate that the principle violated by the evidentiary rule "is so
15 rooted in the traditions and conscience of our people as to be ranked as fundamental." Id.
16 at 47 (internal quotations and citations omitted).

17      In deciding if the exclusion of evidence violates the due process right to a fair trial
18 or the right to present a defense, the court balances the following five factors:  (1) the
19 probative value of the excluded evidence on the central issue; (2) its reliability; (3)
20 whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence
21 on the issue or merely cumulative; and (5) whether it constitutes a major part of the
22 attempted defense. Chia v. Cambra, 360 F.3d 997,1004 (9th Cir. 2004) (citing Miller v.
23 Stagner, 757 F.2d 988, 994 (9th Cir. 1985)).  Moreover, the excluded evidence must be so
24 critical to the issue of guilt or innocence that its exclusion violates due process. Perry v.
25 Rushen, 713 F.2d 1447, 1455 (9th Cir. 1983).  The court must also give due weight to the
26 state interests underlying the state evidentiary rules on which the exclusion was based.
27 Chia, 360 F.3d at 1006; Miller, 757 F.2d at 995.
28      The state appellate court concluded that the trial court's exclusion of Garduno's

1    testimony regarding petitioner's reason for avoiding police was not erroneous because of
2    the speculative nature of the testimony and its potential for misleading the jury. (Resp't
3    Ex. F at 11-12.)
4          This court finds that, under the applicable Miller factors, the state court's decision
5    was neither contrary to nor an unreasonable application of clearly established federal law,
6    nor was it an unreasonable determination of the facts in light of the evidence presented.
7    See 28 U.S.C. § 2254(d). Beginning with the factors that favor petitioner, the third factor
8    - whether the evidence is capable of evaluation by the trier of fact - weighs for petitioner
9    since the jury could have heard Garduno's testimony and the prosecution would have had
10   an opportunity to cross-examine her. The fourth factor - whether the statement is the sole
11   evidence on the issue or merely cumulative - also weighs in favor of petitioner because
12   Garduno's testimony would be the sole evidence presented to rebut the prosecution's
13   inference of consciousness of guilt. These two factors, however, are outweighed by the
14   remaining three factors. The first factor, the probative value of the excluded evidence,
15   weighs against petitioner because Garduno's testimony was not closely connected to the
16   central issue of whether petitioner committed the carjacking. The second factor -
17   reliability - weighs against petitioner because Garduno's opinion on why petitioner was
18   avoiding the police would have been speculative, and was not supported by any other
19   probative evidence. The fifth factor also weighs against petitioner because Garduno's
20   testimony would not have been a major part of his defense, since Garduno was not a
21   witness to the carjacking and her testimony alone would not have exonerated petitioner.
22   Although quantitatively the balancing of interests may seem close, qualitatively the
23   factors weigh heavily against petitioner. In sum, petitioner's proffered evidence, based on
24   its lack of probity and its tendency to confuse the jury, was not closely connected to the
25   issue of his guilt or innocence and falls short of the critical and reliable evidence that if
26   excluded would violate due process. See Perry, 713 F.2d at 1455.
27         Moreover, the alleged error was of the type "which in the setting of a particular
28   case are so unimportant and insignificant that they may, consistent with the Federal

Order Denying Petition for Writ of Habeas Corpus
G:\PROSEEX1\J Murai\Gutierrez_order.wpd

Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." Chapman v. California, 386 U.S. 18, 22 (1967).  A habeas petitioner is not entitled to relief unless the trial error "'had substantial and injurious effect or influence in determining the jury's verdict.'"  Brecht, 507 U.S. at 637.  In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." Id.  If the court is convinced that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand.  O'Neal v. McAninch, 513 U.S. 432, 437 (1995). Even with Garduno's testimony rebutting consciousness of guilt, the evidence against petitioner was substantial.  In particular, Lionetti identified petitioner as the perpetrator, and he also confided in Logan that the police had brought in his assailant. Further, although defense counsel was prevented from questioning Garduno about petitioner's reasons for avoiding the police, on redirect examination the prosecutor actually elicited testimony from her that petitioner had been harassed and beaten by police in the past, thus establishing the exact inference defense counsel was seeking. (Resp't Ex. F at 11.)  Therefore, even if exclusion of the evidence was erroneous, it cannot be said that the error had a substantial and injurious effect on the jury's verdict. See Brecht, 507 U.S. at 637.  Accordingly, petitioner is not entitled to federal habeas relief on this claim.

       3.       <u>Cumulative Errors Were Prejudicial</u>

Petitioner claims that the cumulative constitutional errors in the previous claims were prejudicial and deprived him of due process and the right to a fair trial. (Pet. at 27-28.)  The state appellate court did not specifically address this claim because it found no reversible error by the trial court. (Resp't Ex. F at 1.)

As previously demonstrated, this court found that the state court properly rejected petitioner's first two claims, and even if there were errors, they were harmless. Accordingly, petitioner is not entitled to federal habeas relief on this claim.

///

///

**CONCLUSION**

For the reasons set forth above, the court concludes that petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceedings. Accordingly, the petition for writ of habeas corpus is DENIED. The clerk shall terminate all pending motions and close the file.

IT IS SO ORDERED.

DATED: 7/14/09

RONALD M. WHYTE
United States District Judge